RALPH W. CAVENAUGH *vs.* W. J. McLAUGHLIN.

December 27, 1887.

**Vendor and Purchaser—Defect in Title.**—The pendency of proceedings (not completed) to condemn real property for public use, is, as between vendor and purchaser, such a defect in the title that the latter, under a contract to convey to him good title, is not obliged to take the title so affected.

Plaintiff brought this action in the district court for Ramsey county, and appeals from a judgment for defendant, on the pleadings, entered under direction of *Kelly,* J. The complaint alleged the making of a contract for the sale of certain real estate by defendant to plaintiff, and the payment by plaintiff of the sum of $250, as earnest-money; and that it was provided in the contract that if the title to the premises should be found defective, the contract was to be void, and the $250 was to be refunded. The complaint then alleges the institution and pendency of the condemnation proceedings mentioned in the opinion, and alleges a demand for the repayment of the sum of $250. The answer admits the making of the contract and the pendency of the condemnation proceedings, and alleges that the defendant has always been ready and willing to carry out the contract, and has tendered to the plaintiff a deed which the plaintiff refused to accept.

*William G. White,* for appellant.

*H. V. Rutherford,* for respondent.

GILFILLAN, C. J. October 25, 1886, plaintiff paid to defendant $250, as earnest-money upon, and as part-payment for, the purchase of a piece of land in the city of St. Paul, which the former agreed to buy, and the latter agreed to sell to him; the purchase to be completed within 15 days after delivery of the abstract of title. The contract

of sale contained this stipulation : "It is hereby agreed by and between the parties to this contract that, if the title to said property is found to be defective, then this agreement is to be and become void, and the above 250 dollars earnest-money refunded; but if the title to said premises is found good, and is not taken by said above-named purchaser, the above 250 dollars to be forfeited by said purchaser." The action is brought to recover the $250.

The allegation of defect in the title is based on these facts:    In April, 1886, the common council of the city of St. Paul, by its preliminary order, instructed the board of public works to investigate and make a report concerning the widening of Lexington avenue. The board of public works made its report thereon, and May 27, 1886, the council passed its final order directing that Lexington avenue be widened as provided therein, and that 10 feet off the easterly side of the premises described in said contract of purchase be condemned and taken for the use of the public as a street.    The proceedings thus stood at the time when, by the terms of the contract, the purchase was to be completed; and the question is, did the pendency of those proceedings make the title "defective," as distinguished from "good," within the meaning of those words, as used in the contract?    The legal title was still in the defendant, and would not be divested until the confirmation of the assessment of damages for the taking should become absolute.    But it can hardly be supposed that the parties contemplated that a transfer by defendant to plaintiff of the bare legal title, without regard to its condition, would answer the contract, or that the title, if the land were then the subject of pending proceedings that might result in defeating it, would be considered good. If such were to be the understanding of the words "defective" and "good" in the contract, then the plaintiff would be required to pay the price and take a conveyance, though the land were subject to attachments, judgments, mortgages, or any other claims that might in time defeat the title conveyed.

Taxes stand on a different footing from condemnation proceedings; for they do not affect the land until they become a lien, and every one purchasing lands must be presumed to do so expecting to pay any taxes that may become a burden on them after his purchase.

But here is a proceeding, the specific purpose of which is to divest the title of the owner, and which the owner has no power to prevent. A conveyance, indeed, at any time before the condemnation proceedings had culminated in a vesting of the title in the city would have passed to the grantee the right to receive the damages allowed for the taking; but, evidently, that alone was not what the plaintiff expected to get, and the defendant expected to pass to him. The land and a good title (without defects) was what was stipulated for. It must be concluded that by good title was meant one indefeasible by reason of anything existing and affecting the land at the time. The defendant could not give such a title.

Judgment reversed.