On the 23d of September, 1924, the defendants Frank Crawford and Mary C. Petrie entered into a contract with the complainants Dr. Rappoport and Bluma C. Rappoport, his wife, wherein they agree to convey to the vendees a certain property therein described for the sum of $13,000, $1,000 of which was paid at the signing of the contract and the balance of $12,000 was to be paid in cash at the time of the delivery of the deed, which was to be on or before the 21st day of November, 1924. The title was to be good and marketable and such as the Atlantic Guaranty and Title Insurance Company would insure, and settlement to be made at the office of said company. *Page 670 
This agreement was signed by Josephine Crawford, wife of Frank Crawford, and Alfred A. Petrie, the husband of Mary C. Petrie, as well as by the parties named therein.
On the day fixed for settlement the complainants appeared at the office of the title company, tendered the amount due and demanded a deed.
The title company declined to insure the premises because of a recognizance in the United States federal court in the sum of $10,000 executed by Frank Crawford as surety for the appearance of one John Mack.
A plan was suggested by the title company that, if the money was deposited with them by the purchaser and a deed executed by the grantors, the recognizance would be canceled and a new one entered into, and, in the meantime, if this could be done, the deed could be recorded and the title be given clear of the lien of the recognizance. The title company would not at that time either insure the title or guarantee that it would at a later day.
The purchaser declined to deposit the money unless the title company would insure the title at that time.
Later, on December 8th, 1924, counsel for the purchaser wrote the title company as follows:
 "Atlantic Guaranty and Title Insurance Company, Real Estate and Law Building,
ATLANTIC CITY, N.J.
DEAR SIRS:
On Saturday, December 6, 1924, you called me by 'phone and suggested that Dr. D.N. Rappoport, the purchaser of lot 14 in block 42, Ventnor City, deposit with your company the amount necessary to complete the settlement, and at the same time you informed me that the recognizances affecting this title had not yet been canceled. Your position appears to be that upon the deposit of the purchase price with your company, that you could record the deed from the grantors to my clients, the purchasers, and that immediately thereafter the recognizances could be canceled and re-entered. This course would result in my clients taking title subject to the lien of a very large recognizance, which I cannot advise them to do.
As we informed you on November 22d, if your company is willing to assume the responsibility for insuring Dr. Rappoport against loss, and would also guarantee to insure all subsequent purchasers and mortgagees clear of any such lien, we might be willing to do this, *Page 671 
but the sellers certainly cannot expect the purchaser to take title subject to these defects. You suggested by telephone to-day that this course was usual. I certainly must positively disagree with you in this respect. I have never known of a case where the purchaser would take such a risk, and the fact that your company will not take the risk, nor will the grantors do it, is sufficient justification for my position in the matter. If Dr. Rappoport wishes to take such a risk, he, of course, is at liberty to do so, but no careful lawyer would ever advise any client to assume such a responsibility. Dr. Rappoport is prepared to make this settlement whenever the title is right for settlement.
 Very truly yours, (Signed) CARLTON GODFREY."
The deed has not been tendered, nor has the title company insured the title to said premises to be a good and marketable title.
The complainant was entitled to a conveyance of the premises in question clear of the lien of said recognizance, which conveyance could have been made by the grantors upon Crawford complying with the terms of said recognizance by causing it to be canceled for that or any other reason.
Since the filing of this bill the land in question has been condemned by the city of Ventnor, and the amount of the award allowed as the value of said premises has been deposited in this court, and the complainants now insist that a decree should be made in their favor for the amount of such award.
Over fifty years ago the court of errors and appeals inHaughwout Pomeroy v. Murphy, 22 N.J. Eq. 531 (on p. 546), held —
"In equity, upon an agreement for the sale of lands, the contract is regarded, for most purposes, as if specifically executed. The purchaser becomes the equitable owner of lands and the vendor of the purchase-money. After the contract the vendor is the trustee of the legal estate for the vendee. Crawford v.Berthol, Sax. 460; Hoagland v. Latourette, 1 Green Ch. 254;Huffman v. Hummer, 2 C.E. Gr. 264; King v. Ruckman, 6 C.E.Gr. 599. Before the contract is executed by conveyance the lands are devisable by the vendee and descendible to his heirs as real estate, and *Page 672 
the personal representatives of the vendor are entitled to the purchase-money. 1 Story Eq. § 789; 2 Ibid. § 1213. If the vendor should again sell the estate of which, by reason of the first contract, he is only seized in trust, he will be considered as selling it for the benefit of the person for whom, by the first contract, he became trustee, and, therefore, liable to account. 2 Spenc. Eq. Jur. 310. Or the second purchaser, if he have notice at the time of the purchase of the previous contract, will be compelled to convey the property to the first purchaser.Hoagland v. Latourette, supra; Downing v. Risley, 2 McCart.94. A purchaser from a trustee, with notice of the trust, stands in the place of his vendor, and is as such a trustee as he was.1 Eq. Cas. Abr. 384; Story v. Lord Windsor, 2 Atk. 631. Thecestui que trust may follow the trust property in the hands of the purchaser, or may resort to the purchase-money as a substituted fund. Murray v. Ballou, 1 Johns. Ch. 566, 581. It is upon the principle of the transmission by the contract of an actual equitable estate, and the impressing of a trust upon the legal estate for the benefit of the vendee, that the doctrine of the specific performance of contracts for the sale and conveyance of lands mainly depends."
This case has been cited innumerable times, and the principles therein stated are firmly established as the law of this state.
A reference will be made to a master for an accounting. *Page 673